IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CRIMINAL ACTION NO. 5:20-CR-00106-KDB-DSC

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | **ORDER** |
| ANTHONY MAURICE TUCKER, | |
| Defendant. | |

**THIS MATTER** is before the Court on Defendant's Motion to Suppress ("Motion") (Doc. No. 15), the parties' associated briefs and exhibits, the Magistrate Judge's Memorandum and Recommendation ("M&R") recommending that the Motion be denied (Doc. No. 18), and Defendant's Objection to the M&R (Doc. No. 21). The Court has carefully considered the Motion, Defendant's objections, and the entire record in this action. The Court concludes, after its *de novo* review, that Defendant's Motion to Suppress should be denied.

## I. BACKGROUND & PROCEDURAL HISTORY

On the night of July 18, 2020, Officer Aaron Travis of the Hickory Police Department was patrolling an area on Highway 70 in Hickory when he claims to have seen a blue Jeep Cherokee commit a traffic violation. Officer Travis testified that he saw the driver of the Jeep Cherokee take an illegal u-turn at an intersection that did not permit left turns and that he had to "swerve" out of the way to avoid a collision with the vehicle. (Doc. No. 23, at 6). Officer Travis subsequently pulled behind the Jeep and activated his emergency lights, initiating a traffic stop.

A second officer, Officer Sigmon, later arrived on scene to assist in the traffic stop. Officer Travis obtained Defendant's driver's license, returned to the patrol vehicle, and ran Defendant's

1

information. The license check revealed that Defendant had an outstanding warrant for misdemeanor second degree trespass. Officer Travis returned to the Jeep and asked Defendant to step out of the vehicle. As Defendant stepped out of the vehicle, Officer Sigmon saw a gun protruding from the driver's side door pocket. Officer Sigmon seized the firearm, took it to his patrol car, cleared it, and stored it inside his vehicle. Defendant was eventually placed under arrest.

On December 16, 2020, a federal grand jury returned a true bill indicting Defendant with a single count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Federal arrest warrants were issued for Defendant on the same day.

On December 30, 2020, Defendant was arrested on the federal warrant in Catawba County, North Carolina. He was held for questioning at a nearby police station, where he was given his Miranda rights. Defendant waived his rights and agreed to speak with law enforcement. During the interview, investigators focused on an open investigation related to an unsolved 2008 homicide. About an hour into the interview, an agent asked Defendant for a DNA sample to rule him out as a suspect in the 2008 homicide. In response, Defendant stated, "I'd rather not. I'd rather get a lawyer 'cause now we're talkin' about murder charges and I already said I would take a polygraph to exort[sic] myself." (Govt.'s Ex. 3, at 1:08:12-18). The interview continued and Defendant eventually admitted to purchasing the firearm related to the underlying felon in possession charge and keeping it for protection.

Defendant filed his Motion to Suppress on April 20, 2021, moving the Court to suppress evidence of the gun and his statements about the firearm obtained during the December 30, 2020 interview. Specifically, Defendant argues law enforcement violated his Fourth Amendment rights by seizing and searching his vehicle without reasonable suspicion or probable cause and violated his Fifth Amendment rights by continuing to question him after he invoked his right to counsel.

2

Case 5:20-cr-00106-KDB-DSC   Document 25   Filed 07/30/21   Page 2 of 10

Defendant's Motion was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). The Magistrate Judge held an evidentiary hearing on the Motion on May 13, 2021, during which the Court heard testimony from Officer Travis and ATF Agent James Wingler (one of three law enforcement officers present during the December 30, 2020 interview). The Court also viewed video captured by Officer Travis's body worn camera during the traffic stop and video of Defendant's interview by law enforcement on December 30, 2020, both of which were admitted as exhibits during the hearing.[1]

After considering the Motion, the Government's response in opposition (Doc. No. 16), and the evidence presented at the evidentiary hearing, the Magistrate Judge issued a M&R recommending that Defendant's Motion to Suppress be denied. (Doc. No. 18). Defendant has objected to the M&R and requested a *de novo* review of his Motion by this Court.

## II. STANDARD OF REVIEW

A district court may designate a magistrate judge to "submit to a judge of the court proposed findings of fact and recommendations for the disposition" of dispositive pretrial matters, including motions to suppress. 28 U.S.C. § 636(b)(1). Any party may object to the magistrate judge's proposed findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). After reviewing the record, the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1)(C). The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. *Id.*

---

[1] The undersigned has reviewed all of the exhibits introduced at the hearing, including the footage from Officer Travis's body cam and footage of the December 30, 2020 interview. The Clerk's Office provided these exhibits to the Court via flash drive.

3

### III. DISCUSSION

#### a. Traffic Stop

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop constitutes a seizure under the Fourth Amendment and thus must be justified by probable cause or reasonable suspicion. *United States v. Johnson*, 734 F.3d 270, 275 (4th Cir. 2013); *United States v. Feliciana*, 974 F.3d 519, 522-23 (4th Cir. 2020). "When a law-enforcement officer has reasonable suspicion that the driver of a vehicle has violated the traffic laws, the officer may stop the vehicle to investigate." *United States v. Ochoa*, __ F.3d __, 2021 WL 1931029 at *5 (4th Cir. May 12, 2021).

Here, the parties dispute whether Officer Travis had reasonable suspicion that Defendant committed a traffic violation. The Government purports that Defendant committed a traffic violation by taking an illegal u-turn and requiring Officer Travis to swerve in order to avoid hitting Defendant's vehicle. Defendant, on the other hand, argues that the u-turn was legal and there is no evidence that he made an unsafe movement or impeded Officer Travis in any way.

At the hearing, Officer Travis testified that he was traveling eastbound on Highway 70 towards the intersection of Highway 70 and Highway 321 when he saw Defendant's vehicle take a u-turn at the intersection. While there was no sign prohibiting u-turns, the intersection had no turning lane, but only lanes for "straight" traffic in the direction Defendant was heading. (Govt. Ex. 1). Officer Travis further testified that Defendant's vehicle "pull[ed] right out in front of [him]" and he had to "swerve out of the way to avoid a collision." (Doc. No. 23, at 6). After hearing Officer Travis's testimony, the Magistrate Judge found Officer Travis's testimony credible and concluded

4

that Defendant's vehicle made an unsafe movement in violation of N.C.G.S. § 20-154 prior to the traffic stop. (Doc. No. 18, at 5). The Court agrees with the Magistrate Judge's analysis.

Defendant objects to the M&R's failure to mention the evidence from Officer Travis's body cam footage, which Defendant argues shows Officer Travis several car lengths behind Defendant's vehicle before pulling him over. "This evidence," Defendant claims, "is crucial in evaluating the totality of the circumstances surrounding the traffic stop in this case and the credibility of Officer Travis's testimony." (Doc. No. 21, at 2). As described by Officer Travis at the suppression hearing, his body worn camera had to be manually activated for any recording to begin. On July 18, 2020, Officer Travis activated his body worn camera only after observing Defendant's vehicle commit the unsafe movement. The fact that he was a short distance behind Defendant's vehicle when the camera began recording does not bear as much weight as Defendant suggests. Nor does it contradict Officer Travis's testimony.

In sum, the evidence is that Defendant made an unsafe movement which is a violation of N.C.G.S. § 20-154. As found by the Magistrate Judge, this traffic violation provided reasonable suspicion to stop the vehicle. Accordingly, the stop of Defendant's vehicle was not a violation of the Fourth Amendment.

### b. Statements Obtained During December 30, 2020 Interview

The Fifth Amendment of the United States constitution provides: "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. Amend. V. "To protect this constitutional right against self-incrimination, the Supreme Court's landmark decision in *Miranda v. Arizona* established certain 'procedural safeguards' that officers must comply with to subject a suspect to custodial interrogation." *United States v. Abdallah*, 911 F.3d 201, 209-10 (4th Cir. 2018) (citing *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966)). Suspects must be

informed of their "right to remain silent" and their "right to the presence of an attorney" before law enforcement may initiate questioning. *Miranda*, 384 U.S. at 444, 467-68. A suspect may waive his *Miranda* rights if he does so "knowingly and voluntarily." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). Upon such a waiver, the police are free to question the suspect. *Davis v. United States*, 512 U.S. 452, 458 (1994). If a suspect "states that he wants an attorney, the interrogation must cease until an attorney is present." *Id.* at 474; *see also Edwards v. Arizona*, 451 U.S. 477 (1981). "Thus, by invoking . . . the right to counsel, a suspect has the 'right to cut off questioning' and officers must cease questioning the suspect." *Abdallah*, 911 F.3d at 210 (citing *Miranda*, 384 U.S. at 474).

To invoke the right to counsel, the suspect's invocation must be "unambiguous." *Davis*, 512 U.S. at 459. "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require cessation of questioning." *Id.* In *Davis*, the Supreme Court held that the statement, "[m]aybe I should talk to a lawyer," was not a request for counsel and that officers were not required to stop questioning or ask clarifying questions about the defendant's statement. *Id.* at 461-62.

As the Magistrate Judge correctly noted, it is undisputed that Defendant was in custody during the recorded interview on December 30, 2020. Agent Wingler read Defendant a Miranda warning before the interview began and Defendant signed a form acknowledging that he understood those rights. (Govt. Ex. 3, at 0:00:30-0:02:45). Defendant proceeded to talk to investigators.

Defendant argues that he unambiguously and unequivocally invoked his right to counsel when he replied to one of the agent's questions about whether he would provide a DNA sample saying, "I'd rather not. I'd rather get a lawyer 'cause now we're talkin' about murder charges and I already

6

said I would take a polygraph to exort [sic] myself." (Govt. Ex. 3, at 1:08:12-18). The Magistrate Judge found that, given the entire context of Defendant's statement, he "did not clearly and unequivocally invoke his right to counsel during the interview and his Fifth Amendment rights were not violated by the officers continuing their questioning." (Doc. No. 18, at 8).

Defendant objects, arguing that the Court cannot look to circumstances that occurred after the request for counsel has been made to cast doubt on Defendant's "otherwise clear invocation" of his right to counsel. (Doc. No. 21, at 4). Specifically, Defendant criticizes the Magistrate Judge's reasoning that because Defendant's statement was made "'in the midst of a continuous flow of conversation,'" "'an objective listener could not have known anything more than that [he] might have wanted the assistance of counsel, which is an insufficient invocation of Fifth Amendment rights.'" (Doc. No. 18, at 8) (quoting *United States v. Williams*, 446 F. App'x 587, 591 (4th Cir. 2011)). In support of this finding, the Magistrate Judge cited to a First Circuit case and included the following quote in a parenthetical: "Nonetheless, [the defendant] continued to talk, unprompted, thus creating ambiguity as to whether he was invoking his right to counsel." (Doc. No. 18, at 8) (citing *United States v. Sweeny*, 887 F.3d 529, 536 (1st Cir. 2018)). Defendant cites to *United States v. Abdallah* in support of his argument that even though a defendant may appear to be a willing participant in the interrogation by continuing to eagerly answer questions, officers must cease all questioning once a defendant invokes his Fifth Amendment rights. 911 F.3d at 208.

In *Abdallah*, officers began interrogation by reading the defendant his Miranda rights. The defendant purportedly interrupted the warning to inform the officers that he "wasn't going to say anything at all." *Id.* One of the agents responded by stating, "Well, just let me finish your Warning first." *Id.* Immediately after the warning, the same agent asked, "Do you even know why you're under arrest[?]" The defendant responded, "No, tell me." *Id.* The agent then repeated the Miranda

7

warning and, this time, the defendant did not interrupt and indicated that he understood his rights. The defendant subsequently made multiple inculpatory statements.

The Fourth Circuit held that Abdallah's statement that he "wasn't going to say anything at all" was an unambiguous invocation of his Fifth Amendment right to remain silent. It cited to numerous courts that held materially indistinguishable statements to be unambiguous invocations of Fifth Amendment rights. *Id.* at 210. The Fourth Circuit held that the district court erred by relying on post-request facts, such as the defendant's demeanor, to "cast ambiguity on [the defendant's] otherwise unambiguous request to remain silent." *Id.* at 211. It further stated: "When determining whether an invocation is ambiguous, courts can consider whether the 'request [itself] . . . or the circumstances *leading up* to the request would render [the request] ambiguous[.]'" *Id.* (quoting *Smith v. Illinois*, 469 U.S. 91, 98 (1984)).

There are notable differences between Defendant's statement to investigators in this case and the statement made by the defendant in *Abdallah*. First, in *Abdallah*, the defendant made the statement that he "wasn't going to say anything at all" while officers were giving him his Miranda warnings and prior to any interrogation. The statement was not made in the midst of a back-and-forth conversation. Here, officers spoke with Defendant for almost an hour before the issue of counsel was raised at all. Moreover, Defendant's statement was made in response to an agent's question about providing a DNA sample for the 2008 homicide investigation. Second, Defendant's statement "I'd rather get a lawyer" is not as unambiguous and unequivocal as the statement made by the defendant in *Abdallah*. As the Government points out in its response to Defendant's objection, the Magistrate Judge did not rely on any conduct after the purported invocation to *create* an ambiguity. Rather, "[t]he ambiguity was present at the time that the defendant said anything about an attorney." (Doc. No. 22, at 4-5). When Defendant said, "I'd rather get a lawyer,"

8

particularly when in the context of a flowing conversation and in response to a direct question, he was not unambiguously and unequivocally invoking his Fifth Amendment rights. *See Owen v. Fla. Dep't of Corr.*, 686 F.3d 1181, 1192-95 (11th Cir. 2012) (holding, in the context of a § 2255 motion, that it was not unreasonable for the Florida Supreme Court to conclude that the defendant's two statements "I'd rather not talk about it" and "I don't want to talk about it" did not constitute an unequivocal invocation of the defendant's right to remain silent because they were isolated statements, made nearly 30 minutes apart, in response to questions about very specific details, and were made in the midst of a give-and-take discussion of the evidence against the defendant); *United States v. Propst*, 369 F. App'x 42, 46 (11th Cir. 2010) (holding that suspect's statement "I mean, I'd rather have a lawyer around to talk or, you know what I am saying, have some papers saying something, you know" immediately after his inquiry into whether officers could make a deal with him in exchange for cooperation, was ambiguous).

In sum, an objective officer in the investigators' position reasonably could believe that Defendant's statement did not mean he wanted to invoke his right to the presence of an attorney, but rather that he would prefer to have an attorney than give a DNA sample for the homicide investigation. Upon consideration of the circumstances as a whole, Defendant did not clearly and unequivocally invoke his right to counsel during the interview and his Fifth Amendment rights were not violated by the officers continuing in their questioning. Thus, his statements regarding the firearm should not be suppressed.

## IV. ORDER

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress, (Doc. No. 15), is **DENIED** for the reasons set forth in this Order and the Magistrate Judge's M&R, (Doc. No. 18).

**SO ORDERED.**

Signed: July 30, 2021

*Kenneth D. Bell*
Kenneth D. Bell
United States District Judge